IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| RAYFORD PERRY #612772 | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:08cv208 |
| TONY GRIFFIN, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Rayford Perry, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the jail. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c).

An evidentiary hearing was conducted pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Perry testified that on May 25, 2008, Officer Tennie Griffin was taking him from his cell to the dayroom. He says that she was "acting belligerent," and that she referred to his grievances and to some medications which had been confiscated. She did not follow TDCJ guidelines and wrote him "bogus disciplinary cases"; Perry says that Griffin stated that he was in possession of a medication called Zantac when he had not been, and that she "destroyed $120.00 worth of commissary." Perry acknowledges that he was found not guilty on the case which he received from Tennie Griffin.

Next, Perry says, Tennie Griffin's husband Tony was supposed to escort him to an interview, and announced over the intercom that Perry was going to a life endangerment interview. When Perry returned, his neighbor said "so you're snitching on us." He says that Griffin later escorted him past his neighbor's cell and that he, Perry, was shot in the neck with a dart.

Perry then discussed an incident which had taken place in 2006 at the Telford Unit, in which he claimed that a marriage had been arranged between himself and Officer Sherry Courtney. He says that he received "bogus disciplinary cases" over the arranged marriage, including a case for masturbating which he received from Officer Courtney, and a case for attempting to establish an inappropriate relationship with an officer which he received for a letter which he wrote to Courtney.[1] Perry complained that these disciplinary cases "kept him in ad seg and off parole," and referred to use of force incidents at the Telford Unit and the Michael Unit in 2004 and 2005.

Perry said that Tony Griffin "knew that the gang members were going to shoot at him, but took him anyway." He said that both Tony and Tennie Griffin threatened to kill him, and that Tennie put him in the dayroom and destroyed his personal property. Perry stated that the destruction of his personal property was related to his claim that his life is in danger because "the general public knows too much."

Perry stated that when he was shot with the dart, he pulled it out. He explained that it was "like getting stuck with a pin," because the darts are made with paper clips or staples. Perry acknowledged that he was "not really injured" as a result of the incident.

Furthermore, Perry said that he was being retaliated against for use of the grievance procedures. When asked to elaborate, he said that he was interviewed in 2005 for all of the grievances which he had filed, and then got transferred to the Michael Unit from the Telford Unit, where Officer Courtney worked. He says that officers from the Telford Unit work overtime at the Michael Unit, apparently despite the fact that the two prison facilities are 170 miles apart.

Perry stated that the retaliation took the form of destroying his commissary items. He says that Tony Griffin "made it known to other inmates" that he, Perry, was a snitch. He says that Tennie Griffin gave him a disciplinary case for possession of medication that he did not have,

---

[1] This incident has been the subject of separate litigation in this Court. *See* Perry v. Livingston, et al., civil action no. 5:06cv81 (E.D.Tex., dismissed August 8, 2006, no appeal taken).

2

but indicates that he was found not guilty on the case. Perry did not specifically explain how he knew that the actions of the defendants were motivated by the grievances which he had filed.

## The TDCJ Records

The Court has received and reviewed copies of certified, authenticated TDCJ records provided at the evidentiary hearing. Perry's medical record contain no mention of any complaint about having been shot with a dart, although he saw medical personnel or mental health personnel on numerous occasions after this allegedly took place. Nor does Perry refer to being shot with a dart in any of his grievances, although he does state that other prisoners threatened to shoot him.

Perry's medical records show that he has been diagnosed with delusional disorder, a diagnosis with which he has expressed disagreement to medical personnel. However, records show that Perry filed almost 90 grievances between February of 2006 and August of 2008, and in virtually every one of these, regardless of the subject matter of the grievance, he mentions a conspiracy between the TDCJ administration and the University of Texas Medical Branch personnel to arrange a marriage between himself and Officer Sherry Courtney. In other grievances, Perry also mentions conspiracies to arrange marriages between himself and an officer named Annie Clayton, and between himself and an officer named Natasha Potts.

Similarly, many of Perry's grievances describe incidents which are virtually identical, with only the names of the persons involved being changed. For example:

Grievance no. 2006108556: On February 15, 2006, Officer Neugebauer hit Perry's cell door with the slot key (a metal bar used to open the food slot door) and threatened to kill him

Grievance no. 2006158866: On May 14, 2006, Officer Morgan hit Perry's cell door with the slot key and threatened to beat Perry with it. Perry also says that he has been undergoing harassment and retaliation ever since he has been filing grievances about the entire TDCJ administration and the entire UTMB medical personnel conspiring to arrange a marriage between Perry and Officer Sherry Courtney.

Grievance no. 2006175031: On June 12, 2006, Officer Morgan hit Perry's cell door with the slot key and threatened to kill him. The Step Two grievance on this issue refers to the conspiracy to arrange a marriage between Perry and Officer Courtney, and also between Perry and Officer Natasha Potts.

Grievance no. 2007003047: On September 1, 2006, Officer Hernandez hit Perry's door with the slot key, refused to feed him, and said that the only reason Perry has not been killed is because the public knows too much, referring in particular to the arranged marriage between Perry and Officer Courtney.

Grievance no. 2007158943: On May 234, 2007, Officer Brian Taylor threatened to hit Perry with the slot key and kill him. Perry also says that he has been undergoing harassment and retaliation ever since he has been filing grievances about the entire TDCJ administration and the entire UTMB medical personnel conspiring to arrange a marriage between Perry and Officer Sherry Courtney.

Grievance no. 2008036145: On October 29, 2007, Officer Andrews and Officer Herrington hit Perry's cell door with their slot keys and threatened to kill him. Perry also says that he has been undergoing harassment and retaliation ever since he has been filing grievances about the entire TDCJ administration and the entire UTMB medical personnel conspiring to arrange a marriage between Perry and Officer Sherry Courtney.

Grievance no. 2008110431: On March 16, 2008, Officer Johnson hit Perry's cell door with the slot key and threatened to kill him. Perry also says that he has been undergoing harassment and retaliation ever since he has been filing grievances about the entire TDCJ administration and the entire UTMB medical personnel conspiring to arrange a marriage between Perry and Officer Sherry Courtney.

Grievance no. 2008143701: On May 14, 2008, Officer Proctor hit Perry's cell door with the slot key and threatened to kill him. Perry also says that he has been undergoing harassment and retaliation ever since he has been filing grievances about the entire TDCJ administration and the entire UTMB medical personnel conspiring to arrange a marriage between Perry and Officer Sherry Courtney.

Although Perry also filed several grievances concerning alleged uses of force, his medical records do not contain any mention of complaints or sick calls regarding these incidents; he does have a lay-in pass which corresponds with the date of one of these alleged uses of force, but the reason for the pass is not clear. As noted above, his medical records also contain no complaints or sick call requests concerning allegedly being shot by a dart; his grievance on this incident says that the inmate in 33 cell threatened to shoot darts at him, but he did not file a grievance or any other complaint alleging that this had actually happened. Perry also filed a number of grievances detailing very similar incidents in which various officers denied him food and said that they wanted him to die, or said that he was crazy and that they wanted him to die. Although Perry's grievances indicate that he was denied meals on numerous occasions, he made no mention of this to medical personnel at any time.

With regard to his claim against Tennie Griffin, Perry filed a grievance saying that on February 25, 2008, Griffin came into his cell and destroyed $120.00 worth of commissary items, including soup, chips, cookies, sodas, and hygiene items. He says that Griffin wrote a false disciplinary case, no. 20080168309. for possession of unauthorized medications, but concedes that when he went to the hearing, he was found not guilty; a review of Perry's disciplinary records confirms that no case with this number or on this date appears in his records. Perry's grievance against Tony Griffin will be discussed below.

Legal Standards and Analysis

Perry's first claim is against Tony Griffin, whom he says announced over the intercom that Perry was going to a life endangerment interview and then escorted him to an interview knowing that other inmates were going to shoot at him with a dart. The time line is not clear; Perry says in his complaint that on July 2, 2006, Griffin spoke over the intercom and asked Perry if he wanted to go talk to Lt. Manning about "that life endangerment you filed." He says that Griffin then said "you know that you snitched on these inmates and that's why they tore their cells up." Perry says that he did go to the interview, and after he returned, his next door neighbor in 33 cell called him to the vent and said "I know that you're snitching now," and that Perry had snitched on two of the neighbor's "homeboys."

Perry states that Griffin knew that the inmates wanted to hurt him and so he would intentionally handcuff Perry when walking him past the cells. He says that he was "stuck in his neck and shoulder" with a dart.

At the evidentiary hearing, Perry explained that getting hit with the dart was like "getting pricked with a pin" because the darts were made of paper clips or staples. He said that he was "not really injured."

Perry's grievance on this incident, Step One grievance no. 2006187575, reads as follows:

> This is a life endangerment. On 7-2-06 at approximately 12:50 p.m., Officer T. Griffin spoke over the intercom. Said officer ask me if I wanted to go talk to Lt.

5

> Manning. He did not consider policy (confidentiality). Reasons for me having an interview with Lt. Manning was pertaining to a life endangerment. When I return to my cell the inmates that lives in 33 cell, nickname Trouble, call me to the vent and stated that he know that I'm snitching now. When I tried to talk with him, all he would say is, "yeah, when they tore up my cell two weeks ago, Officer Norman told me that somebody had sent an I-60 [inmate request form] out on me, now I know that it was you. Also when they tore my homeboy cell up, 37 cell, and my other homeboy in 35 cell. That's O.K., we are going to shoot darts at you every time you leave your cell or if the opportunity comes, we will kill you, snitch." I have been undergoing harassment and retaliation ever since I've been filing grievances against the entire U.T.M.B. medical personnel also the entire T.D.C.J. administration because of the way these two agencies did come together to conspire and arranged a marriage with me and Officer Sherry Courtney.

The response to this grievance was that the issues had been processed in accordance with the Safe Prison Program, and Lt. Ball investigated Perry's claim of life endangerment and found no evidence to support this allegation. The results of the investigation were forwarded to a reviewing committee, which also found no evidence to support the allegation.

In his Step Two appeal of the grievance, Perry said that an improper investigation was conducted at the Step One level. He states that names and cell locations had been provided for the inmates who had threatened to shoot darts at him, and that he had told Lt. Ball that he was afraid. He asked to be moved to a safer location but policies and procedures are being violated; Perry says that these violations have gone on ever since TDCJ Executive Director Brad Livingston granted for Officer Sherry Courtney to conspire and arrange a marriage with bogus disciplinary cases [sic]. He adds that Medical Director John Raasoch and Dr. Troy Caldwell joined in the conspiracy by diagnosing him as delusional.

The response to this grievance was that an investigation conducted at the Step Two level revealed that the response provided at the unit [i.e. Step One] level adequately addressed the complaint, and that the Step Two appeal failed to provide any new information or evidence to warrant further review in the matter, so no corrective action is required.

Perry's claim against Tony Griffin is in essence that Griffin was deliberately indifferent to his safety. The Supreme Court has specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

Along these lines, the Fifth Circuit has held that prison officials have a duty to protect inmates from violence at the hands of other prisoners; however, not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation. Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995). The plaintiff prisoner must prove *both* that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety. Horton, 70 F.3d at 401, *citing* Farmer, 114 S.Ct. at 1977 (emphasis added).

In this case, Perry has failed to show that Tony Griffin's actions amounted to a constitutional violation. Even assuming that Griffin acted with deliberate indifference to Perry's safety with regard to the comments made over the intercom, to the effect that Perry was snitching, this is only one prong of the test; Perry has failed to show that he was incarcerated under conditions posing a substantial threat of serious harm. At the time of the incident, Perry was housed in administrative segregation, in 12 Building E Pod 32 Cell. Being in administrative segregation, he was confined to his cell 23 hours per day and had no physical contact with any other inmate, at any time. Perry makes no showing that the mere fact that other inmates had threatened him – hardly an unusual circumstance within the confines of a prison – meant that he was incarcerated "under

7

conditions posing a substantial risk of serious harm."[2] This is highlighted by the fact that when the threatened harm came, it took the form of an injury which Perry described as "being like pricked with a pin" and for which he sought no medical care. While it seems clear that Officer Griffin should not have spoken over the intercom as Perry says that he did, Perry has failed to show a violation of his constitutional rights. The fact that Perry was handcuffed when taken out of his cell is standard practice in the administrative segregation housing area, where Perry was confined. *See, e.g.*, Martin v. Scott, 156 F.3d 578, 579 (5th Cir. 1998) (inmate in administrative segregation complained, *inter alia*, that prison rules required him to be handcuffed every time he left his cell; the Fifth Circuit concluded that the case was frivolous). Perry's claim against Officer Tony Griffin is without merit.

Perry also claims that Tennie Griffin wrote him a false disciplinary case and destroyed a large quantity of commissary goods. He concedes that he was found not guilty on the disciplinary case. In Taylor v. Cardize, 172 Fed.Appx. 589 (5th Cir., March 27, 2006) (unpublished) (available on WESTLAW at 2006 WL 775141), a Mississippi inmate complained that he had received a rule violation report for hanging up a sheet. However, he conceded that he was not restrained in any way as a result of the report and that he was found not guilty at a hearing; the Fifth Circuit concluded that the inmate had failed to allege a constitutional deprivation. Similarly, in Perkins v. Stone, 992 F.2d 325 (5th Cir., April 30, 1993) (unpublished) (available on WESTLAW at 1993 WL 152059), the inmate contended that his constitutional rights were violated when he was wrongly accused of a disciplinary infraction, for which he was found not guilty, but the Fifth Circuit concluded that he had failed to allege discrete facts sufficient to demonstrate any violations of his constitutional rights and affirmed the dismissal of his case.

---

[2] In his concurring opinion in Farmer, Justice Thomas aptly noted that "Prisons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." Farmer, 511 U.S. at 858 (Thomas, J., concurring).

8

In the present case, Perry has failed to show that the fact that Officer Tennie Griffin gave him a disciplinary case, for which he was found not guilty, infringed upon any constitutionally protected liberty interests. His claim on this point is without merit.

Perry also complains that Tennie Griffin destroyed a substantial amount of commissary goods. This is in effect a claim of unauthorized deprivation of his property.

The doctrine of Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on grounds not relevant here) and Hudson v. Palmer, 468 U.S. 517 (1984), known collectively as the *Parratt/Hudson Doctrine*, states that a random and unauthorized deprivation of a property or liberty interest belonging to an incarcerated prisoner does not violate procedural due process if the State furnishes an adequate post-deprivation remedy. *See* Caine v. Hardy, 943 F.2d 1406, 1412 (5th Cir. 1991). Three predeprivation conditions must exist before the doctrine can be applied. These are: (1) that the deprivation be unpredictable; (2) that predeprivation process be impossible, making any additional safeguard useless; and (3) that the conduct of the state actor be unauthorized. Where these conditions exist, the State cannot be required to do the impossible by providing predeprivation process. Charbonnet v. Lee, 951 F.2d 638, 642 (5th Cir. 1992), *citing* Zinermon v. Burch, 494 U.S. 113 (1990); Myers v. Klevenhagen, 97 F.3d 91, 94-95 (5th Cir. 1996).

Hudson holds that deprivations of property by prison officials, even when intentional, do not violate the Due Process Clause of the Fourteenth Amendment provided that an adequate state post-deprivation remedy exists. Hudson, 468 U.S. at 533. The Texas state administrative and judicial systems provide an adequate state post-deprivation remedy. Tex. Gov. Code Ann. art. 501.007 (Vernon Supp. 1994); *see also* Murphy v. Collins, 26 F.3d 541, 543-44 (5th Cir. 1994). Thus, the appropriate forum for the plaintiff's claim lies in state court or in the administrative procedures of TDCJ rather than federal court. Simmons v. Poppell, 837 F.2d 1243 (5th Cir. 1987). Perry's claim on this point is without merit insofar as he seeks to litigate it in federal court.

Next, Perry alleges generally that he has been the victim of retaliation. In his complaint, he sets out the legal standards applicable to retaliation claims and makes the conclusory

assertions that he has alleged facts from which retaliation may be inferred and that he has alleged direct evidence of motivation.

The Fifth Circuit has stated that a prisoner who asserts a retaliation claim must assert specific facts; mere conclusory allegations are not enough. Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988); Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988). The elements of a claim under a theory of retaliation are the invocation of a specific constitutional right, the defendant's intent to retaliate against the plaintiff for his exercise of that right, a retaliatory adverse act, and causation, which is a showing that but for the retaliatory motive, the action complained of would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson, 110 F.3d at 310, *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

In this case, although Perry says in a conclusory manner that he has alleged a chronology of events from which retaliation may plausibly be inferred, and that he has alleged direct evidence of retaliatory motivation, in fact his pleadings wholly fail to do so. The Fifth Circuit has held that "temporal proximity alone is insufficient to prove 'but for' causation." Strong v. University Healthcare System, LLC, 482 F.3d 802, 808 (5th Cir. 2007); Reese v. Skinner, — F.3d —, slip op. no. 08-40490 (5th Cir., April 21, 2009) (unpublished) (citing Strong). In Reese, the inmate testified that the defendants' harassment of him intensified after he began filing grievances, but the Fifth Circuit held that this was insufficient proof of causation. Similarly, Perry's bare assertions that the acts directed against him were motivated by his grievances are not sufficient to show that but for these grievances, the actions would not have occurred. As noted above, Perry filed almost 90 grievances between February of 2006 and August of 2008, a period of some 30 months, for an

average of about one grievance every 10 days.  He cannot use the fact that he files numerous grievances to thereby argue that every action taken by prison officials which he does not like is necessarily motivated by these grievances.  *See* Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) (noting that prisoners cannot openly flout prison regulations after filing a grievance and then bring a claim under Section 1983 arguing that prison officials disciplined him in retaliation for filing a grievance); Woods v. Smith, 60 F.3d at 1166 (noting that inmates must produce either direct evidence of retaliation or a chronology of events from which retaliation may *plausibly* be inferred) (emphasis added).  Perry's bald assertions are simply insufficient to support a constitutional claim of retaliation, and his contention on this point is without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees.  Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory.  Neitzke v. Williams, 490 U.S. 319, 325-7 (1989).  A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Perry's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted.  Consequently, his lawsuit may be dismissed as frivolous

under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A(b). It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

**So ORDERED and SIGNED this 27th day of April, 2009.**

                                        JOHN D. LOVE
                         UNITED STATES MAGISTRATE JUDGE